UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>Joseph Michael Dunkley Sr.,<br><br>    Defendant. | Case No. 22-cr-339(3) (WMW/DJF)<br><br>**REPORT AND RECOMMENDATION** |

This matter is before the Court on Defendant Joseph Michael Dunkley Sr.'s Motion to Suppress (ECF No. 93). Mr. Dunkley seeks to suppress evidence obtained as the result of a traffic stop around midnight on the night of August 10, 2022 (*see* ECF No. 124). He does not challenge the initial basis for the stop but challenges the search of his vehicle following the stop. (*Id.*) For the reasons given below, the Court finds probable cause existed for the search, and that police officers had authority to tow and search the vehicle pursuant to department policy, which would have led to the inevitable discovery of the evidence at issue. The Court accordingly recommends denying Mr. Dunkley's Motion to Suppress.

**I.    Background**

On the night of August 10, 2022, Shakopee Police Department Patrol Officer Caitlin Kavanaugh[1] was on patrol in a marked SUV in a high-crime area where officers often encounter vehicles engaged in criminal activity en route to a local casino. (*See* ECF No. 123 at 18–19, 20, 23–24, 39, 41). When a gold sedan drove past her, she ran a search of its plates in the squad car

---

[1] At the time of the stop and when she filed the police report, Officer Kavanaugh had the surname Schumacher.

1

computer system, which indicated that Colin Frank Goodwin owned the vehicle and that his license was suspended. (*Id.* at 20, 41.) The search also produced a photocopy of Mr. Goodwin's driver's license and flagged that Mr. Goodwin was subject to an unserved order for protection with a woman as the petitioner. (*Id.* at 20–21, 42.) Upon receiving this information, Officer Kavanaugh started following the vehicle. She drove up alongside the car to determine who was driving and concluded that the driver matched the driver's license photo of Mr. Goodwin. (*Id.* at 21–23; Gov. Ex. 1.) Though it was dark out and both cars were moving, she was able to determine that the driver and the man depicted in the photo appeared to be roughly the same age, had dark hair, appeared to be indigenous males, and had similar facial hair and skin color. (ECF No. 123 at 22–23, 47; Gov. Ex. 1.) She concluded the driver matched the driver's license photo after intentionally passing a streetlight, which made it easier for her to see inside the vehicle. (ECF No. 123 at 43.) She also noticed there was a woman in the front passenger's seat. (*Id.* at 21.)

Officer Kavanaugh then turned on her emergency lights to initiate a stop for driving with a suspended license. (*Id.* at 21.) She also stopped the car because of the unserved protection order and because there was a female passenger in the car. (*Id.* at 21.) The car complied and pulled over without the need for Officer Kavanaugh to activate her siren. (*Id.* at 23.) She approached the vehicle from the passenger side and immediately noticed a small piece of tinfoil with burnt markings on it between the passenger's legs on top of her purse. (*See id.* at 25, 33, 44.) Officer Kavanaugh testified that, in her training and experience, tinfoil is often used to smoke and inhale illicit drugs and indicates possible drug use. (*Id.* at 25.) She said she could not think of any reason why tinfoil of that size would have burnt markings on it, other than drug use. (*Id.* at 25–26.)

Officer Kavanaugh then turned her attention to the driver, explaining the basis for the stop and requesting his identification. (*Id.* at 27.) She says she believed the person in the driver's

2

license photo could be the driver, but she had not confirmed the driver was Mr. Goodwin. (*Id.*) The driver stated that he did not have a driver's license or other form of identification with him, but said his name was Michael Dunkley and that his birth date was December 17, 1982. (*Id.* at 27–28.) He spoke erratically, jumping from topic to topic and providing information that was unrelated to the stop. (*Id.* at 29.) He claimed his identification card was at a hotel, made comments about some sort of car crash, and said the car was his sister's. (*Id.* at 28.) When Officer Kavanaugh returned to the squad car to search his name and birth date, the report came back with no person found. (*Id.* at 29.) She returned to the car and asked for more information to try to identify the driver. This time he gave and old address and a Social Security number. (*Id.* at 30.) She again returned to the squad car, ran the information, and still was unable to identify the driver. (*Id.* at 30–31.)

Officer Kavanaugh's partner, Officer Soto, assisted during the stop. She remained with the vehicle at the passenger side window to watch the occupants while Officer Kavanaugh searched the squad car computer. (*Id.* at 30.) Officer Soto had to keep reminding the female passenger to stop moving, and at one point saw the woman reach between her legs in what Officer Soto believed was an attempt to conceal something. (*Id.* at 30–31.) When Officer Kavanaugh returned to the vehicle, she informed the occupants that she was going to have a fingerprint reader brought to the site to identify the driver. (*Id.* at 31.)

Officer Kavanaugh asked the occupants to exit the vehicle due to the burnt tinfoil and other indications of possible illicit drug use. (*Id.*) According to Officer Kavanaugh, the other indications of possible drug use or other criminal activity included that: the occupants were sweating and appeared to be nervous; the occupants engaged in an inaudible conversation amongst themselves, which suggested they may have been trying to ensure their stories matched; and the driver

3

repeatedly failed to identify himself. (*See id.* at 29, 30–32.) Officer Kavanaugh also testified that when she asked about the tinfoil, the woman told her it was "old" and denied using drugs that evening. (*Id.* at 31.) Officer Kavanagh stated that it appeared the tinfoil had been used recently because it was uncommon for a drug user to keep an old piece of paraphernalia readily accessible on top of an item like a purse. (*Id.* at 33.)

After the occupants exited the vehicle—roughly 30 minutes after the stop began—Officer Kavanaugh began to search it while Officer Soto remained with the occupants. (*Id.* at 34.) In the center console she found a small plastic bag containing roughly 100 grams of a white, chalky, powdery substance, which later tested positive for fentanyl. (*Id.*) On the passenger side, Officer Kavanaugh found part of a pen that appeared to have been used as a straw and had brown residue on its end. (*Id.*)

Officer Soto monitored the two occupants after they exited the vehicle and noticed the driver asking the passenger for a card in her shirt. (*Id.* at 35.) Officer Soto saw the corner of a driver's license, asked to see it, and found it was a driver's license identifying the driver as Joseph Michael Dunkley. (*Id.*) The officers sent his name to dispatch, and a sergeant responded by informing them there was a warrant for Mr. Dunkley's arrest. (*Id.* at 35–36.) The officers then arrested Mr. Dunkley pursuant to that warrant. (*Id.* at 36.)

Since Mr. Dunkley was under arrest and the woman who was with him had a suspended or revoked license, no one was present and available who could legally drive the vehicle, which was parked on the shoulder of a heavily trafficked road. (*Id.* at 24, 36–37.) Based on police policy pursuant to an opinion issued by the county attorney, officers may tow a vehicle if it presents a safety risk and there is no proof of insurance, no occupant with a valid driver's license is present,

4

or the registered owner is not present. (*Id.* at 37.) Shakopee Police Department policy authorizes police to search and inventory any vehicle that meets these conditions and is towed. (*Id.* at 38.)

Officer Kavanaugh determined that the conditions for towing under the department's policy were met and had the car towed. (*Id.*) The car was inventoried after it was towed, and the search yielded various personal items. (*Id.*) Officer Kavanaugh testified that officers conducting an inventory search always look into car compartments, including center consoles. She said that if police had searched the car only in an inventory search, and had not searched it on the scene at the time of Mr. Dunkley's arrest, they still would have found the contraband in the center console during the inventory search. (*Id.* at 38–39.)

## II.   Analysis

Mr. Dunkley argues Officer Kavanaugh did not have probable cause to search the vehicle and that all evidence obtained from the search must be suppressed (ECF No. 124). He specifically argues that the piece of burnt tinfoil did not establish probable cause. The Government argues Officer Kavanaugh had probable cause for the search based on the totality of the circumstances. It further argues the evidence is admissible pursuant to the inevitable discovery doctrine, since police towed and inventoried the car pursuant to department policy and the drugs would have been discovered during the inventory search if Officer Kavanaugh had not searched the car at the scene (ECF No. 130). The Court finds Officer Kavanaugh had probable cause to search the vehicle, and that police inevitably would have discovered the contraband when they towed, searched and inventoried the car pursuant to valid department policy. Mr. Dunkley's Motion to Suppress should be denied for these reasons.

The warrantless search of a person's property presumptively violates the Fourth Amendment unless a recognized exception to the warrant requirement applies. *See, e.g., United*

*States v. Castaneda*, 438 F.3d 891, 893 (8th Cir. 2006).  One such exception is the "automobile exception", which permits police to search a car without a warrant if they have probable cause to believe the search will result in the discovery of evidence or contraband.  *Cronin v. Peterson*, 982 F.3d 1187, 1198 (8th Cir. 2020).  "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place."  *United States v. Murillo-Salgado*, 854 F.3d 407, 418 (8th Cir. 2017) (quoting *United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003)).  This is "not a high bar:  It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians act."  *Kaley v. United States*, 571 U.S. 320, 338 (2014) (cleaned up) (internal citations and quotations omitted).

     Prior to searching the vehicle, Officer Kavanaugh saw a piece of burnt tinfoil between the passenger's legs on top of her purse in arm's reach, and she noted the passenger's response when asked about the tinfoil was not credible when the passenger said it was "old" (ECF No. 123 at 25–26, 31).  *See, e.g.*, *United States v. Clark*, 20-cr-233 (WMW/LIB), 2021 WL 5630791, at *5 (D. Minn. Dec. 1, 2023) (collecting Eighth Circuit cases recognizing that "burned tin foil is indicative of illicit drug use").  In addition, Mr. Dunkley repeatedly gave Officer Kavanaugh false information about his identity (ECF No. 123 at 27–30).  *See, e.g.*, *United States v. Feye*, 568 F. Supp. 3d 962, 977 (N.D. Iowa. 2021) (finding probable cause under the automobile exception, in part, because the defendant and a passenger in the vehicle repeatedly refused to provide accurate information regarding their identities).  Officer Soto observed the female occupant repeatedly moving, despite instruction to the contrary, and saw her reach down by her feet where the suspected paraphernalia was located, in what Officer Soto believed may have been an attempt to hide something from the officers (ECF No. 123 at 30–31).  *See, e.g.*, *United States v. Johnson*, 14-cr-

6

130 (SRN/SER), 2014 WL 5860478, at *14 (D. Minn. Nov. 12, 2014) (finding probable cause to search a vehicle, in part, because the driver was observed reclining unusually far backwards in what appeared to be a possible attempt to hide something). Both occupants appeared to be sweating, and they were speaking to each other in a manner that appeared to be intentionally inaudible so that the officers could not hear what they were saying (ECF No. 123 at 32–33, 45). *See, e.g.*, *United States v. Scott*, 13-cr-3121, 2017 WL 1683904, at *5 (W.D. Mo. March 13, 2017) (finding probable cause to search a vehicle, in part, because the occupants expressed nervous behavior such as sweating and looking from side to side). These factors in their totality provided Officer Kavanaugh with probable cause to believe the vehicle contained contraband, justifying the search.

Furthermore, even if Officer Kavanaugh had not searched the vehicle at the scene, the evidence obtained from it is otherwise admissible because it inevitably would have been discovered. Under the "inevitable discovery doctrine," evidence will not be suppressed if: the Government can show that: (1) but for the alleged constitutional violation, the evidence would have been lawfully acquired; and (2) the government was actively pursuing a substantial alternative line of investigation. *See United States v. Baez*, 983 F.3d 1029, 1038-39 (8th Cir. 2020) (citing *United States v. Conner*, 127 F.3d 663, 667 (8th Cir. 1997)). The inevitable discovery doctrine is similar to the harmless error doctrine and prevents courts from setting aside convictions that would have been obtained even without the alleged constitutional transgression. *Nix v. Williams*, 467 U.S. 431, 443 n.4 (1984).

In this case, Mr. Dunkley's failure to produce a valid driver's license and the resulting investigation into his identity led to his arrest for an outstanding warrant (ECF No. 123 at 31–36). Because of his arrest, and because the female passenger did not have a valid license and the

registered owner of the vehicle was not present, the officers were authorized to tow the vehicle from its unsafe location on the shoulder of a highly trafficked roadway. (*Id.* at 36–38.) Pursuant to department policy the officers had authority to conduct an inventory search of the towed vehicle, which almost certainly would have led to the discovery of the contraband in the console if Officer Kavanaugh had not already found it. (*Id.* at 38–39); *see also United States v. Kimhong Thi Le*, 474 F.3d 511, 514–515 (8th Cir. 2007). Based on these facts, the inevitable discovery doctrine applies and establishes alternative grounds for denying Mr. Dunkley's Motion to Suppress.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** Mr. Dunkley's Motion to Suppress (ECF No. [93]) be **DENIED**.

Dated: November 20, 2023          *s/ Dulce J. Foster*
                                  Dulce J. Foster
                                  United States Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).